[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 138.]

THE STATE EX REL. THOMPSON BUILDING ASSOCIATES, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Thompson Bldg. Assoc., Inc. v. Indus. Comm.,* **1998-Ohio-280.**]

*Workers' compensation—Scaffolds—VSSR—Industrial Commission's award of additional compensation for violations of specific safety requirements upheld when commission's order specifically identifies the cause of claimant's industrial accident.*

(No. 96-103—Submitted August 19, 1998—Decided September 16, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 95APD01-45.

————————————

*W. Michael Shay*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Miltina A. Gavia*, Assistant Attorney General, for appellee.

————————————

*Per Curiam.*

{¶ 1} Appellant, Thompson Building Associates, Inc. ("Thompson"), seeks a writ of mandamus directing appellee, Industrial Commission of Ohio, (1) to vacate its order awarding additional compensation to claimant Victor A. Pileggi for Thompson's violations of specific safety requirements ("VSSRs"), and (2) to issue an order denying the award. The Court of Appeals for Franklin County denied the writ. Thompson appeals as of right. We affirm.

{¶ 2} In May 1981, Pileggi fell from a scaffold that toppled while he was working as a carpenter for Thompson. His workers' compensation claim was allowed for "fractured right side of head, severe contusions to back of head and fractured low back, loss of vision of both eyes." In March 1983, Pileggi applied

for additional compensation, alleging various VSSRs. Administrative and judicial review of his application eventually produced the order in *State ex rel. Thompson Bldg. Assoc., Inc., v. Indus. Comm.* (1988), 36 Ohio St.3d 199, 522 N.E.2d 545, in which we affirmed the grant of the writ that ordered the commission to give its reasons for finding Thompson in violation of Ohio Adm.Code 4121:1-3-10(C)(1), (2), (3); to conduct further proceedings on Pileggi's charges that Thompson had also violated Ohio Adm.Code 4121:1-3-10(C)(11) and (F)(2), as well as Ohio Adm.Code 4121:1-3-03(J)(1) and (7); and to specify the evidence and reasons for assessing Thompson's additional compensation penalty at fifteen percent of the maximum weekly rate. *Id.*, 36 Ohio St.3d at 200, 522 N.E.2d at 546.

{¶ 3} In compliance, the commission heard the cause again and, based on a hearing officer's recommendation, ordered:

"It is the finding of the Commission that the employer of record violated 4123:1-3-10(C)(1), (2), and (3) for the following reasons:

"Rule 4121:1-3-10(C)(1) reads:

"[']( 1) The footing or anchorage for scaffolds shall be sound, rigid, and capable of carrying four times the maximum rated load without settling or displacement. Unstable or loose objects shall not be used to support scaffolds.[']

"Rule 4121:1-3-10(C)(2) reads:

"[']( 2) Scaffolds and their components shall be capable of supporting without failure no less than four times the maximum rated load.[']

"Rule 4121:1-3-10(C)(3) reads:

"[']( 3) Any scaffold including accessories, such as braces, brackets, trusses, screw legs, ladders, etc., damaged or weakened from any cause shall be immediately repaired or replaced.[']

"Maximum rated load is defined in 4121:1-3-10(B)(22) as:

"['](22) "Maximum rated load" means the total of all loads including the working load, the weight of the scaffold, and such other loads as may be reasonably anticipated.[']

"The scaffolding toppled over after the claimant had placed the seventh bundle of shingles on the scaffold. The shingles weighed fifty to sixty-five pounds per bundle. The claimant, who was the only individual on the scaffold at the time it fell, weighed approximately two hundred pounds. The working load on the scaffold, at the time it toppled over, was approximately 650 pounds. Evidence on file indicates that the evening before claimant's injury, a leg of the scaffolding had been displaced as a result of a car that had backed into it. This information was derived from the affidavit of John DeSaavedra. Claimant also stated in his application that a leg of the scaffold moved off the footing as he stood atop the scaffold. Furthermore, an affidavit of Terry Mosher, a foreman, stated that the scaffold looked unstable and shaky on two days previous to the claimant's injury and on the day of the claimant's injury.

"Claimant has also cited in his Application for Violation of a Specific Safety Requirement that the employer has violated 4121:1-3-10(C)(11), 4121:1-3-10(F)(2) and 4121:1-3-03(J)(1) and (7). Rule 4121:1-3-10(C)(11) reads:

"[']( 11) The poles, legs, or uprights of scaffolds shall be plumb and securely and rigidly braced to prevent swaying and displacement.[']

"It is the finding of the Commission that the employer violated 4121:1-3-10(C)(11) for the reason that evidence on file demonstrates that scaffold was 'shaky and unstable.' This evidence is found in the testimon[y] of * * * Terry Mosher.

"Rule 4121:1-3-10(F)(2) reads:

"[']( 2) Scaffold legs shall be set on adjustable bases or plain bases placed on mud sills or other foundations adequate to support four times the maximum rated load.[']

"It is the finding of the Commission that this section was violated for the same reasons cited in the employer's violation of 4121:1-3-10(C)(1).

"Claimant has also cited 4121:1-3-03(J)(1) in support of his Application. This section reads:

"[']Lifelines, safety belts and lanyards shall be provided by the employer and it shall be the responsibility of the employee to wear such equipment when engaged in securing or shifting thrustouts, inspecting or working on overhead machines that support scaffolds, or on other high rigging, on steeply pitched roofs, by employees at work on poles or steel frame construction, by employees working on all swinging scaffolds, by all employees exposed to hazards of falling when the operation being performed is more than fifteen feet above ground or above a floor or platform, and by employees required to work on stored materials in silos, hoppers, tanks, and similar storage areas. Lifelines and safety belts shall be securely fastened to the structure and shall sustain a static load of no less than five thousand four hundred pounds.[']

"There is disagreement between claimant's and employer's counsel as to whether or not there were safety belts provided by the employer on the construction site. Affidavits from John DeSaavreda, James Thompson and Terry Mosher have stated that there was one available in a truck on the construction site[;] claimant has cited that he was unaware of its existence. The claimant has also stated that even if the claimant had been provided with a safety belt, there would have been no place to tie it off on the scaffolding.

"It is a finding of the * * * [Commission] that even if the claimant had worn a safety belt and it had been tied off, it would not have prevented his injuries for the reason that the injuries were sustained when the scaffolding toppled over.

"The claimant has also cited Rule 4121:1-3-03(J)(7) in support of his Application. This rule reads:

"['](7) Safety nets may be used in lieu of lifelines and safety belts.[']

4

"It is the finding of the Commission that this rule was not violated for the reason that the employer of record did provide a safety belt as provided for by 4121:1-3-03(J)(1).

"It is further the finding of the * * * [Commission] that even if a safety net had been provided, claimant's injuries would not have been prevented.

"It is the finding of the Commission that the employer of record has violated 4121:1-3-10(C)(1), (2), and (3) and 4121:1-3-10(F)(2). It is further finding of the Commission that the weight of the evidence supported the previous 15% VSSR award.

"The finding and award is based on the report of Robert McCollum, Investigator, the evidence in the file, and the evidence adduced at the hearing."

{¶ 4} The commission also denied Thompson's motion for rehearing of this order, explaining:

" * * * The employer has not submitted any new and relevant evidence nor has the employer shown that the order * * * was based on an obvious mistake of fact.

"It is hereby ruled that the hearing officer did not state that the scaffold toppled over because of having been displaced as a result of a car backing into it. The fact that a day before the accident a leg of the scaffold was displaced as a result of a car hitting the scaffold was mentioned by the hearing officer in outlining the history of events leading up to the day of injury, but she did not specifically opine that the car accident was the 'cause' of the scaffold falling over.

"In fact the hearing officer indicated that before the car accident the scaffold was unstable based on the affidavit of Mr. Mosher, who stated that two days prior to the accident he viewed the scaffold as unstable. Therefore, it appears that the hearing officer determined that there were causes for the scaffold being unstable and falling which were independent of the car accident.

"Consequently, because the hearing officer had reasons to determine the scaffold toppled over independent of the car accident and because she never specifically stated the car accident was the proximate cause of the safety violation, the employer's assertion that the violation was based on an intervening car accident is not well founded and no mistake of fact has been demonstrated."

{¶ 5} Thompson raises three propositions of law. First, Thompson complains that the commission did not sufficiently explain its decision because it made no finding as to whether the scaffold toppled because it was "shaky and unstable," as reported by Thompson's foreman, or because a car purportedly backed into the scaffold the night before Pileggi was injured. Second, Thompson insists that the commission could not find a violation of Ohio Adm.Code 4121:1-3-10(C)(1), (2), (3), (11), or (F)(2), the regulations concerning stable and adequately supported scaffolding, without eliminating the effect of the asserted car accident as the cause of the failed scaffolding. Finally, Thompson maintains that since it had no knowledge of scaffold damage produced by the car accident, it cannot be held accountable for injury attributable to that damage.

{¶ 6} But underlying all of Thompson's propositions of law is a single premise—that the commission failed to specifically identify the cause of Pileggi's industrial accident. We disagree with this assessment of the commission's rulings. As observed in its rehearing order, the commission determined that the scaffold was "shaky and unstable," and therefore in violation of all the safety requirements concerning adequate anchoring and support, even before any car later backed into it. And Thompson does not argue lack of knowledge about this unsafe condition. In fact, evidence indicates that Thompson's foreman had warned his superiors about the unstable scaffold at least two times prior to Pileggi's injury.

{¶ 7} Accordingly, we reject the premise that the commission did not sufficiently explain the cause of the instant toppled scaffold and further reject the

arguments founded upon this premise. The court of appeals' judgment, therefore, is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

F.E. SWEENEY, J., dissents.

——————————